**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARCELINO CASTRO,

*Plaintiff,*

- v. -

CAPTAIN JANET SMITH and CORRECTIONS OFFICER OCTAVIAN DUGGINS,

*Defendants.*

Case No. 16-CV-8147 (RA)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF ELECTRONICALLY STORED INFORMATION**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000 (phone)
(212) 403-2000 (fax)

*Attorneys for Plaintiff Marcelino Castro*

Dated: June 6, 2023

# Table of Contents


Page

PRELIMINARY STATEMENT ........................................................................................1

I. DOC Destroyed Relevant ESI. ........................................................................................2

A. The footage existed. ........................................................................................2

B. The footage should have been preserved. ........................................................................................3

II. Sanctions Should Be Imposed Regardless of DOC's State of Mind. ........................................5

III. DOC's Destruction of ESI Is Properly Attributable to Defendants. ........................................5

CONCLUSION........................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Stanbro* v. *Westchester Cnty. Health Care Corp.*,
No. 19-cv-10857, 2021 WL 3863396 (S.D.N.Y. Aug. 27, 2021) ............................................. 6

*Vogt* v. *MEnD Corr. Care, PLLC*,
No. 21-cv-1055, 2023 WL 2414551 (D. Minn. Jan. 30, 2023)) ........................................... 5, 6

**Statutes and Rules**

Fed. R. Civ. P. 37(e) ............................................................................................................ 2

Fed. R. Civ. P. 37(e)(1) ......................................................................................................... 5

N.Y. Gen. Mun. Law § 50-k(3) ............................................................................................ 6

## PRELIMINARY STATEMENT

Defendants' opposition confirms that sanctions for the destruction of the video footage of the September 20, 2015 Incident recorded by a DOC officer are not only permissible, but very much appropriate.

Defendants' lead argument is that Mr. Castro has not proven the existence of the video in question. But Defendants cannot really dispute that the video existed (and was destroyed); they dispute what was on the video. This is precisely why sanctions are necessary. The reason the contents of the video are not certain is solely because the video was improperly destroyed. Even if, as Defendants assert, the video footage did not capture the moment in which Defendants struck Mr. Castro on the nose, at minimum it captured Mr. Castro's condition in the period immediately after the strike, making it relevant electronically stored information ("ESI"). That Defendants' supervisor initially claimed to review the video in finding, in an after-incident report, that Defendants' actions were appropriate, only to later claim under oath that he never reviewed the video, makes sanctions all the more appropriate as the New York City Department of Correction ("DOC") itself initially claimed reliance on the video as part of its ordinary course review procedures.

Defendants then make two arguments in an attempt to avoid the consequences of the destruction of the video by DOC, their employer. First Defendants argue that they cannot be sanctioned because they did not intend to deprive Mr. Castro of ESI. But what matters here is DOC's state of mind. And here there is evidence that DOC intended to deprive Mr. Castro of the video footage. In making this argument, Defendants also ignore entirely the fact that the intent to deprive is not a prerequisite for sanctions. Even the negligent destruction of the ESI would warrant sanctions given the prejudice to Mr. Castro.

More broadly, Defendants assert that no aspect of the spoliation of the video footage can be attributed to them because Defendants did not exercise control over the footage. But the facts here—including DOC's hiring and continued employment of Defendants; DOC's control of the evidence used by Defendants in this litigation; DOC's representation of Defendants through the New York City Law Department; and DOC's indemnification of Defendants—are facts that have led other courts to impute a department of correction's destruction of evidence to correction officer defendants.

## I. DOC Destroyed Relevant ESI.

Before this Court can impose sanctions upon Defendants for DOC's spoliation of video footage, Mr. Castro must first establish that the footage existed, that it should have been preserved, that DOC failed to take reasonable steps to preserve the footage, and that the footage has been destroyed with no chance of recovery. *See* Fed. R. Civ. P. 37(e). Mr. Castro has done just that. In fact, Defendants do not dispute these facts in any meaningful way—what they really dispute is the contents of the video. Their argument, however, proves exactly why sanctions are both appropriate and necessary.

### A. The footage existed.

DOC records indicate that a Probe Team consisting of three correction officers responded to the September 10, 2015 Incident. *See* Ex. I to Declaration of Ethan P. Amaker in Support of Plaintiff's Motion for Sanctions for Spoliation of Electronically Stored Information ("Opening Brief Ex. I"). According to Use of Force ("UOF") reports authored by members of that Probe Team, one member, Officer Storey, was assigned to operate a video camera while responding to the September 10, 2015 Incident. *See* Opening Brief Ex. H at D000027; Ex. A to Declaration of Ethan P. Amaker at D000023. In her UOF report, Officer Storey stated that she "responded with the Probe Team" to the September 10, 2015 Incident "and operated the

[h]andheld video camera during the alarm." Opening Brief Ex. H at D000027. Indeed, Captain David Levy, the DOC officer assigned to conduct the initial investigation of the incident initially claimed to review the video in finding that the Defendants acted appropriately. *See* Opening Brief Ex. J at D000014 (describing the "handheld video camera" footage as "coincid[ing] with staff reports"). Later, when testifying under oath, Captain Levy denied reviewing the video, despite his after-incident report, but did not dispute its existence. *See* Opening Brief Ex. F at 44:17–45:2 ("Q. Did you view any video as part of your investigation? A. There was no video documentation of the incident, sir. Q. Was there a Probe Team video? A. There was a Probe Team that went down with a video camera, but at that point, the use of force had already occurred. Q. Did you review that footage? A. No. I did not.").

Defendants do not rebut this evidence. Instead, Defendants misconstrue Officer Storey's report and disingenuously suggest that when Officer Storey wrote that she "operated" the videocamera, she really meant that she simply held the videocamera without recording or even turning it on. *See* Defs.' Opp'n to Pl.'s Mot. for Sanctions ("Opp'n") at 2. Nothing offered up by Defendants, including the fact that Mr. Castro did not depose Officer Storey, calls the record evidence into question. That evidence shows that Officer Storey and two other correctional officers were dispatched to the Rikers Island medical unit in response to the September 10, 2015 Incident; of the three officers, Officer Storey was assigned to operate a handheld video camera; and Officer Storey operated a handheld videocamera upon her arrival to the medical unit.

**B. The footage should have been preserved.**

Defendants do not contest that DOC was put on notice that Mr. Castro might sue on September 10, 2015, and that DOC was, thus, obligated to preserve relevant ESI from that date onward. Defendants attempt to overcome the fact that DOC was on notice by suggesting

that the footage was not relevant. Specifically, Defendants claim that the video footage could not have captured the strike to Mr. Castro's nose and that it "[a]t most . . . depicted non-party [Correction Officer] Lenza flex cuffing the plaintiff and the subsequent transport to Intake." Opp'n at 2–4. This argument fails for two reasons.

First, it is not clear when the Probe Team dispatched in response to the September 10, 2015 Incident arrived at the medical unit. As proof that the Probe Team arrived after DOC officers struck Mr. Castro on the nose, Defendants cite a report prepared by Assistant Deputy Warden Keesha Nance and the deposition testimony of Captain David Levy. *See* Opp'n at 3–4 (citing Opening Brief Exs. F; K). But neither DOC officer was present during, or immediately after, the September 10, 2015 Incident. *See* Opening Brief Exs. J; K. Moreover, as noted, Captain Levy based his initial conclusion that Defendants acted appropriately on the destroyed video footage. *See* Opening Brief Ex. J at D000014 ("Based on staff reports, medical documentation (staff and inmate), and the handheld video camera, I find and conclude that staff acted appropriately . . . .").

Second, even if the destroyed footage failed to capture the strike to Mr. Castro's nose, it would still be relevant ESI that DOC was obligated to preserve. Footage of Mr. Castro recorded in the immediate period after DOC officers struck him on the nose would show his condition after that strike, including whether his nose was bloody. Thus, this footage would be manifestly relevant in determining whether Mr. Castro was injured as a result of the strike to his nose, a point contested by the parties. The video footage provided objective information that may not be accurately reflected in witness testimony or written documentation. And thanks to DOC, that footage is now lost.

## II. Sanctions Should Be Imposed Regardless of DOC's State of Mind.

As noted in Mr. Castro's opening brief, there is sufficient circumstantial evidence to establish that DOC intended to deprive him of ESI. *See* Opening Brief at 9–10. Defendants do not challenge the evidence of intent cited by Mr. Castro. Instead, Defendants argue that they "could not have had culpable states of mind" because "the duty to preserve evidence did not attach to them and they lacked control over" the spoliated video footage. This is misdirection. As discussed in greater detail below, DOC's spoliation of the video footage should be imputed to Defendants. And where a department of correction's spoliation is properly attributable to corrections officers, so too is the department of correction's state of mind. *See, e.g.*, *Vogt* v. *MEnD Corr. Care, PLLC*, No. 21-cv-1055, 2023 WL 2414551, at *14 (D. Minn. Jan. 30, 2023) (attributing county correctional facility's "intent to destroy [camera footage] for the purpose of suppressing evidence" to correctional officer defendants not responsible for maintaining footage), *report and recommendation adopted by* 2023 WL 2414531 (D. Minn. Mar. 8, 2023).

Moreover, Defendants opt not to mention that sanctions can be imposed even if DOC did not intend to deprive Mr. Castro of ESI. The negligent destruction of ESI is sanctionable when the loss of the ESI prejudices a party. *See* Fed. R. Civ. P. 37(e)(1). Here Mr. Castro has established prejudice. *See* Opening Brief at 11–12. Defendants do not address or dispute this point at all and thus concede it.

## III. DOC's Destruction of ESI Is Properly Attributable to Defendants.

Defendants argue that they cannot be sanctioned for DOC's spoliation because, as "line correctional officers," Defendants did not exercise control over the footage and, thus, could not have preserved it. *See* Opp'n at 4–8. As Defendants correctly note, there is no bright-line rule that a department of correction's spoliation must always be attributed to individual

correctional officers. *See id.* at 7. Instead courts must consider on a "case-by-case basis" whether to impute a department of correction's spoliation to correctional officers who were not personally responsible for preserving the spoliated evidence. *Stanbro* v. *Westchester Cnty. Health Care Corp.*, No. 19-cv-10857, 2021 WL 3863396, at *7 (S.D.N.Y. Aug. 27, 2021) (McCarthy, M.J.) (quotation omitted).

The facts of this case warrant imputation of DOC's spoliation to Defendants. DOC trained and employed Defendants; has custody and control over the evidence used by Defendants in this litigation (including the Use of Force reports that Defendants cite in opposition to this motion); and, through the New York City Law Department, represents Defendants in this litigation. Further, in the event Mr. Castro obtains a judgment against Defendants or Defendants agree to settle this litigation, the City of New York—the government entity that is the parent of DOC—will indemnify Defendants. *See* N.Y. Gen. Mun. Law § 50-k(3). Faced with similar facts, other courts have imputed departments of correction's spoliation to line correctional officers. *See Vogt*, 2023 WL 2414551, at *13–14 (collecting cases from various circuits). And courts have done so even where the agency that has spoliated the evidence is not a party to the litigation. *See, e.g.*, *id.* at *1 n.2, *14 (imputing county correctional facility's failure to preserve video footage to correctional officer defendants where county was "no longer a party for all practical purposes").

**CONCLUSION**

Sanctions for the spoliation of ESI should deter parties from engaging in spoliation, place the risk of an erroneous judgment on a party who wrongfully created the risk, and restore the prejudiced party to the same position he would have been in absent the spoliation. Although DOC, the entity responsible for the spoliation, is no longer a party to this litigation, it provides legal representation for the remaining Defendants and has a very real stake in the

outcome. An adverse inference sanction or, at minimum, an order permitting Mr. Castro to introduce evidence regarding the loss of the video footage at trial will deter DOC from engaging in future spoliation, ensure that DOC bears the risk of an erroneous judgment, and will come closest to restoring Mr. Castro to the position he would have been in had the footage been preserved.

Dated: New York, New York
June 6, 2023

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ Ethan P. Amaker
Jonathan M. Moses (JM 9049)
Ethan P. Amaker (admitted *pro hac vice*)

51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Fax: (212) 403-2000

*Attorneys for Plaintiff Marcelino Castro*