**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARCELINO CASTRO,

*Plaintiff,*

- v. -

CAPTAIN JANET SMITH and CORRECTIONS
OFFICER OCTAVIAN DUGGINS,

*Defendants.*

Case No. 16-CV-8147 (JGLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
(212) 403-1000 (phone)
(212) 403-2000 (fax)

*Attorneys for Plaintiff Marcelino Castro*

Dated:  October 20, 2023

## TABLE OF CONTENTS

I.      **RESPONSE TO DEFENDANTS' FIRST MOTION *IN LIMINE*** ............................ 1

II.     **RESPONSE TO DEFENDANTS' SECOND MOTION *IN LIMINE*** ..................... 2

III.    **RESPONSE TO DEFENDANTS' THIRD MOTION *IN LIMINE*** .......................... 2

IV.     **RESPONSE TO DEFENDANTS' FOURTH MOTION *IN LIMINE*** ..................... 4

V.      **RESPONSE TO DEFENDANTS' FIFTH MOTION *IN LIMINE*** ......................... 5

VI.     **RESPONSE TO DEFENDANTS' SIXTH MOTION *IN LIMINE*** ......................... 5

VII.    **RESPONSE TO DEFENDANTS' SEVENTH MOTION *IN LIMINE*** ................... 6

VIII.   **RESPONSE TO DEFENDANTS' EIGHTH MOTION *IN LIMINE*** ...................... 7

IX.     **RESPONSE TO DEFENDANTS' NINTH MOTION *IN LIMINE*** ........................ 9

X.      **RESPONSE TO DEFENDANTS' TENTH MOTION *IN LIMINE*** ....................... 10

**CONCLUSION** ...................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*Arch Specialty Ins. Co.* **v.** *BP Inv. Partners*
    No. 18-cv-1149, 2021 WL 1795496 (M.D. Fla. Feb. 2, 2021)................................................. 5

*Baltas* **v.** *Frenis*
    No. 18-cv-1168, 2023 WL 5392168 (D. Conn. Aug. 22, 2023)............................................. 8

*Cooper* **v.** *Morales*
    535 F. App'x 425 (5th Cir. 2013) ................................................................................ 11, 12

*Edwards* **v.** *City of New York*
    No. 08-cv-2199, 2011 WL 2748665 (E.D.N.Y. July 13, 2011) ........................................... 1, 2

*Fox* **v.** *Cruz*
    No. 15-cv-390, 2022 WL 17844917 (N.D.N.Y. Sept. 27, 2022)........................................... 8

*Graham* **v.** *Connor*
    490 U.S. 386 (1989)............................................................................................................ 7, 9

*Hayes* **v.** *Normandie LLC*
    306 A.D.2d 133 (N.Y. App. Div. 2003) ............................................................................... 6

*Henderson* **v.** *Glanz*
    No. 12-cv-68, 2017 WL 11684638 (N.D. Okla. May 1, 2017) ............................................ 3

*Kendrick* **v.** *Hann*
    No. 19-cv-1642, 2023 WL 1992568 (M.D. Pa. Feb. 14, 2023)............................................ 5

*Lindsey* **v.** *Butler*
    No. 11-cv-9102, 2017 WL 4157362 (S.D.N.Y. Sept. 18, 2017) .......................................... 8

*Lopez* **v.** *LeMaster*
    172 F.3d 756 (10th Cir. 1999) ............................................................................................. 3

*M.C.* **v.** *County of Westchester*
    No. 16-cv-3013, 2022 WL 1124920 (S.D.N.Y. Apr. 13, 2022) (citing *Lightfoot* v.
    *Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997))........................................................ 1

*Palmer* **v.** *Molina Meneses*
    No. 12-cv-4741, 2016 WL 7191668 (E.D.N.Y. Dec. 12, 2016)............................................ 6

*Ricketts* **v.** *City of Hartford*
    74 F.3d 1397 (2d Cir. 1997) ................................................................................................. 8

*Robinson* **v.** *Delgado*
    No. 02-cv-1538, 2010 WL 1838866 (N.D. Cal. May 3, 2010)............................................. 11

ii

***Scoma* v. *City of New York***
   No. 16-cv-6693, 2021 WL 1784385 (E.D.N.Y. May 4, 2021)................................... 12

***TVT Records* v. *Island Def Jam Music Grp.***
   250 F.Supp.2d 341 (S.D.N.Y. 2003) ...................................................................... 11

***Williams* v. *Regus Mgmt. Grp., LLC***
   No. 10-cv-8987, 2012 WL 1711378 (S.D.N.Y. May 11, 2012) ........................................ 10, 11

## <u>Statutes</u>

**Fed. R. Civ. P. 7(b)(1)(B)**............................................................................................ 3

Plaintiff Marcelino Castro, by his undersigned counsel, files this memorandum of law in opposition to Defendants' Motions *In Limine* (Dkt. 144).  Defendants' strategy in filing these motions is clear—they seek to exclude relevant evidence of Defendants' intent and Plaintiff's damages while improperly introducing character evidence that serves no purpose other than to smear Plaintiff as a drug user and someone who is "no stranger to violence."  For the reasons below, this Court should deny Defendants' Motions *In Limine*.

## I.  <u>RESPONSE TO DEFENDANTS' FIRST MOTION *IN LIMINE*</u>

Defendants move to preclude Plaintiff from requesting a specific dollar amount from the jury.  But as Defendants concede, the Second Circuit has left "the determination of whether to allow a plaintiff to request a specific amount of damages from the jury" to trial courts.  *See M.C.* v. *County of Westchester*, No. 16-cv-3013, 2022 WL 1124920, at *6 (S.D.N.Y. Apr. 13, 2022) (citing *Lightfoot* v. *Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997)).

Exercising this discretion, courts within this Circuit have permitted plaintiffs in § 1983 actions to suggest specific dollar amounts for pain and suffering.  *See, e.g.*, *Dunham* v. *Lobello*, No. 11-cv-1223, 2023 WL 3004623, at *7 (S.D.N.Y. Apr. 19, 2023); *M.C.*, 2022 WL 1124920, at *6 ("[T]he Court holds that Plaintiff's counsel will be permitted to suggest a specific amount of non-lost wage damages during closing statements."); *Edwards* v. *City of New York*, No. 08-cv-2199, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011).  This figure provides a valuable data point for a jury tasked with measuring noneconomic damages—in the absence of a "culturally established method of equating pain and suffering with money damages," juries "want to know what the plaintiff expects as damages."  2 Jacob A. Stein, *Stein on Personal Injury Damages* § 8:1 (3d ed. 2023 update).

Defendants suggest that a dollar amount should be avoided altogether because a jury may place undue weight on such a figure. But courts have employed a number of tools to minimize this risk to the extent it exists. Courts have permitted plaintiffs to suggest specific amounts during closing statements only, required plaintiffs to notify defendants of the specific amount before presenting the amount to the jury so that defendants may prepare a response, instructed juries that suggested amounts are only argument, and have given defendants leave to propose limiting instructions. *See, e.g.*, *Dunham*, 2023 WL 3004623, at *7; *M.C.*, 2022 WL 1124920, at *6; *Edwards,* 2011 WL 2748665, at *2. To the extent the Court has any concern, such alternative approaches are more than sufficient to address any hypothetical claim of prejudice Defendants might advance while avoiding the prejudice to Plaintiff of leaving the jury in the dark as to the amount of Plaintiff's demand.

## II.   **RESPONSE TO DEFENDANTS' SECOND MOTION *IN LIMINE***

Defendants move to preclude Plaintiff from introducing evidence of or inquiring into other civil rights claims involving Defendants or non-party witnesses. *See* Defendants' MIL Brief at Point II. Defendants did not raise this issue prior to filing its motion and thus the parties did not meet and confer on this issue. In any event, Plaintiff does not intend to introduce such evidence or inquire into such matters at trial.

## III.   **RESPONSE TO DEFENDANTS' THIRD MOTION *IN LIMINE***

Defendants move to preclude Plaintiff from introducing evidence of any violation of New York City Department of Correction ("DOC") policies or directives. *See* Defendants' MIL Brief at Point III.[1] Here, Plaintiff seeks to introduce DOC's Directive Regarding Uses of Force (the

---

[1] Although Defendants have styled this motion as one that also seeks the preclusion of the investigation file relating to the September 10, 2015 Use of Force, *see* Defendants' MIL Brief at 5, Defendants supply no grounds whatsoever for this relief. As Defendants have failed to "state with particularity the grounds for seeking the order,"

"UOF Directive").  Ex. A to Declaration of Ethan P. Amaker in Support of Plaintiff's

Memorandum of Law in Opposition to Defendants' Motions *In Limine* (hereafter, "Ex.").

Defendants' take the position that this document has "no bearing on the constitutionality of

defendants' actions" and that the introduction of the directive and any violations of the directive

into evidence would "unnecessarily confuse the jury."  *See id.* at 5–6.  Defendants are wrong on

both fronts.

      Defendants correctly note that a violation of a DOC directive does not, in and of itself,

establish a constitutional violation.  It does not, however, follow that DOC directives "have no

bearing on the constitutionality of defendants' actions."  Defendants' awareness of the DOC

directive governing uses of force as of September 10, 2015 and their potential violations of that

directive are relevant to Defendants' intent when using force against Plaintiff.  *Lopez* v.

*LeMaster*, 172 F.3d 756, 761 (10th Cir. 1999) ("While [prison regulations] do not establish

constitutional parameters for [conditions of confinement claim], they do provide persuasive

authority concerning what is required. . . . [T]he record contains ample evidence from which a

finder of fact could conclude that these standards were violated, that failure to adhere to them

posed a substantial risk of harm, and that [defendant] knew of the dangerous conditions prevalent

at the Jackson County jail, but failed to take reasonable measures to insure the safety of prisoners

within his care."), *abrogated on other grounds by Brown* v. *Flowers*, 974 F.3d 1178 (10th Cir.

2020); *Henderson* v. *Glanz*, No. 12-cv-68, 2017 WL 11684638, at *2 (N.D. Okla. May 1, 2017)

(denying motion to exclude evidence of internal policies on similar grounds).

---

Fed. R. Civ. P. 7(b)(1)(B), their motion should be denied to the extent it seeks to preclude Plaintiff from
introducing evidence of the investigation file at trial.

Plaintiff further notes that this Court has permitted him to introduce evidence "that video footage existed that would have shown, at a minimum, the aftermath of the [September 10, 2015] Incident, and that the video was deleted by DOC despite the department's obligation to preserve it." Opinion & Order at 25 (Dkt. 132). The UOF Directive is relevant to DOC's obligation to preserve the destroyed footage. *See* UOF Directive at D001473 ("The Tour Commander shall also ensure that any physical evidence is preserved in accordance with Operations Order #05/07 (Crime Scene Incident Management).").

## IV.    RESPONSE TO DEFENDANTS' FOURTH MOTION *IN LIMINE*

Defendants move to preclude "evidence of theories of liability which have been dismissed" and in doing so seek to limit Plaintiff's testimony to "the facts of the alleged encounter and the damages that flow from the strike." *See* Defendants' MIL Brief at Point IV. At the summary judgment stage, this Court dismissed Plaintiff's claim for denial of medical care, his excessive force claims based on uses of force other than the September 10, 2015 blow to his nose, and all claims against the City of New York. This Court also dismissed Plaintiff's claims against DOC.

There is no dispute that Plaintiff is barred from relitigating claims previously dismissed by this Court. But in certain respects, facts and evidence underlying those dismissed claims are relevant to Plaintiff's remaining Eighth Amendment claim. For example, the fact that Mr. Castro was in the facility seeking medical treatment is relevant background to the events giving rise to the incident. Likewise, the fact that Mr. Castro's nose injury went untreated for a year and a half, for example, is relevant to both the dismissed denial of medical care claim and the remaining excessive force claim, specifically the pain and suffering arising from the Defendants' use of force. In moving to broadly exclude evidence relating to dismissed claims, Defendants

have not identified a single fact that relates *only* to those claims.  Accordingly, Defendants'

request is far too broad and should be denied.  *See Kendrick* v. *Hann*, No. 19-cv-1642, 2023 WL

1992568, at *3 (M.D. Pa. Feb. 14, 2023) ("Defendant['s] request to exclude all evidence

regarding Plaintiff's previously dismissed claims is overly broad.  As appropriately argued by

Plaintiff, there are facts and evidence underlying [dismissed First Amendment retaliation and

Fourteenth Amendment due process] claims which are relevant to his remaining Eighth

Amendment conditions-of-confinement claim against Defendant . . . ."); *Arch Specialty Ins. Co.*

v. *BP Inv. Partners*, No. 18-cv-1149, 2021 WL 1795496, at *3 (M.D. Fla. Feb. 2, 2021)

(granting motion to "exclude any evidence or argument related to" dismissed claim "as to any

reference to the dismissed . . . claim" but denying the motion "as to any facts that are relevant to

both claims").

## V.    <u>RESPONSE TO DEFENDANTS' FIFTH MOTION *IN LIMINE*</u>

Defendants move to preclude plaintiff from seeking damages for psychological injury

beyond "garden variety" emotional distress.  *See* Defendants' MIL Brief at Point V.  But as

Plaintiff informed defendants, to the extent Plaintiff seeks damages for emotional distress, he

does not intend to introduce evidence of any medically diagnosed psychological or emotional

harm.  Relief on the motion is unnecessary.

## VI.    <u>RESPONSE TO DEFENDANTS' SIXTH MOTION *IN LIMINE*</u>

Defendants move to preclude Plaintiff from seeking economic damages, including for

lost income or medical expenses, based on Plaintiff's failure to provide a computation of

damages pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii).  *See* Defendants' MIL

Brief at Point VI.  Plaintiff does not seek any economic damages such as lost wages or medical

expenses.  Plaintiff does, however, seek compensatory damages for past and future pain and

suffering and loss of enjoyment of life.  Although Plaintiff does not seek future medical

expenses, his need for future surgery directly informs his damages for future pain and suffering.

*See, e.g.*, *Palmer* v. *Molina Meneses*, No. 12-cv-4741, 2016 WL 7191668, at *3 (E.D.N.Y. Dec.

12, 2016) (reducing future damages award in part because plaintiff was "not at risk of future

surgery"); *Hayes* v. *Normandie LLC*, 306 A.D.2d 133, 133 (N.Y. App. Div. 2003) ("The award

for future pain and suffering is adequately supported by medical evidence that future []

surgery . . . might be necessary to alleviate pain.").

**VII.    RESPONSE TO DEFENDANTS' SEVENTH MOTION *IN LIMINE***

Defendants move to preclude Plaintiff from referring to Defendants' counsel as "city

attorneys" and from offering evidence of indemnification.  S*ee* Defendants' MIL Brief at

Point VII.

As stated in the parties joint letter to the Court dated October 13, 2023:

> Plaintiff has agreed not to introduce evidence at trial regarding the
> indemnification of Defendants, provided that Defendants refrain
> from introducing evidence of their financial condition.  Should
> Defendants introduce evidence of their financial condition at trial,
> the Parties agree that Plaintiff is permitted, subject to the Court's
> approval, to introduce evidence of indemnification.

To the extent Defendants now seek to preclude evidence of indemnification, that evidence should

be precluded subject to the agreed-upon limitation above.

While Plaintiff does not seek to make extensive reference to the City of New York at

trial, some explanation of the relationship between Defendants, DOC, and the City of New York

is necessary for the jury to make sense of DOC's destruction of relevant video footage.  This

Court previously determined that DOC's spoliation could be properly attributed to Defendants in

part because of the common legal representation between Defendants, the DOC, and the City of

New York and the fact that the City of New York will likely indemnify Defendants if Plaintiff

succeeds in this litigation.  Opinion & Order at 12–13 (Dkt. 132).  A limited instruction that

attorneys from the Office of Corporation Counsel represent members of DOC, which is, in turn,

an agency of the City of New York, will achieve this goal and is consistent with instructions

given by other courts in this circuit.  *See, e.g.*, *Dunham*, 2023 WL 3004623, at *6–7 ("Plaintiff is

precluded from referring to the City in this case and Defendants' counsel shall be referred to as

attorneys from the Office of the Corporation Counsel.  The jury will be informed that the

Corporation Counsel represents members of the New York City Police Department which is an

agency of the City of New York.").

## VIII.    RESPONSE TO DEFENDANTS' EIGHTH MOTION *IN LIMINE*

Defendants seek to preclude evidence that Defendants "created the need to use force by

their actions prior to the" use of force, or that they "exacerbated the situation by their actions or

appearance."  *See* Defendants' MIL Brief at Point VIII.  Defendants base their argument upon

the wrong authorities, namely *Fourth Amendment* excessive force cases, which purportedly stand

for the proposition that only "those facts known to the officer[s] at the precise moment the

officer[s] used force" are relevant when assessing the reasonableness of Defendants' actions in

an *Eighth Amendment* excessive force case—Defendants' actions in the moments leading up to

the use of force are not.  *See* Defendants' MIL Brief at 13–15.

Defendants' reliance on Fourth Amendment excessive force cases proves fatal.  In

contrast to a Fourth Amendment excessive force plaintiff, whose claim turns on what a

"reasonable" officer would do, a plaintiff in an Eighth Amendment excessive force case must

show the officer's intent, specifically that the officer acted "maliciously and sadistically" for the

purpose of causing harm.  *See Graham* v. *Connor*, 490 U.S. 386, 398–99 (1989) ("Differing

standards under the Fourth and Eighth Amendments are hardly surprising:  the terms 'cruel' and

7

'punishments' clearly suggest some inquiry into subjective state of mind, whereas the term

'unreasonable' does not.").  As an officer's words or actions in the moments leading up to (or

immediately after) a use of force are illustrative of that officer's subjective state of mind, this

information is relevant in an Eighth Amendment excessive force case.  Courts within this circuit

agree.  *See, e.g.*, *Baltas* v. *Frenis*, No. 18-cv-1168, 2023 WL 5392168, at *10 (D. Conn. Aug. 22,

2023) (denying summary judgment on Eighth Amendment excessive force claim due to

"conflicting evidence concerning *the circumstances leading up to* and during" defendant's use of

force (emphasis added)); *Fox* v. *Cruz*, No. 15-cv-390, 2022 WL 17844917, at *2 (N.D.N.Y.

Sept. 27, 2022) (permitting plaintiff to introduce evidence of the defendant's intent, including

"admissible statements that Defendant made to him" and testimony regarding the "nature of any

interactions" between plaintiff and defendant)  *Lindsey* v. *Butler*, No. 11-cv-9102, 2017 WL

4157362, at *4 (S.D.N.Y. Sept. 18, 2017) (concluding that "information reasonably related to the

events *leading up to*, during, and after the [use of force]" was "relevant and proportional to the

needs of the case" and directing defendants to produce such information to plaintiff (emphasis

added)).

Even if Fourth Amendment cases *could* properly inform this Court's analysis of

Plaintiff's Eighth Amendment claim,[2] those authorities would not render Defendants' actions in

the moments leading up to the use of force irrelevant.  In the Fourth Amendment context, those

actions may be considered for the purpose of assessing the credibility of a defendant.  *See*

*Ricketts* v. *City of Hartford*, 74 F.3d 1397, 1411–12 (2d Cir. 1997) ("[I]n assessing the credibility

of an officer's account of the circumstances that prompted the use of force, a factfinder may

consider, along with other factors, evidence that the officer may have harbored ill-will toward the

---

[2] Defendants cite no authority to this effect.

citizen." (quoting *Graham*, 490 U.S. at 399 n.12)).  They are also potentially relevant where punitive damages are sought, as the punitive damages inquiry expressly considers the defendant's intent.  *See id.*

## IX.    RESPONSE TO DEFENDANTS' NINTH MOTION *IN LIMINE*

Defendants argue that they should be permitted to introduce evidence and question Plaintiff regarding his participation in "fights and assaultive conduct" having nothing to do with the incident at issue in this case.  *See* Defendants' MIL Brief at Point IX.  Defendants claim that they seek to introduce this evidence for the narrow purpose of "limiting [Plaintiff's] purported damages," *id.*, but do so without (1) having deposed Plaintiff's medical expert on this (or any other) issue, (2) retaining their own medical expert, or (3) identifying *any* record evidence to link purported "fights and assaultive conduct" to the physical injuries at issue in this case.  Nor have Defendants tied these purported fights and instances of assaultive conduct to Plaintiff's emotional damages.  *See id.* (stating, without further elaboration, that "[Plaintiff's] contacts after the incident involving abuse or threats towards corrections officers is relevant for the jury to consider whether he suffered the emotional damages claimed.").

Defendants make no real effort to conceal that their true purpose is to introduce impermissible character evidence in an attempt to denigrate Plaintiff before the jury and to show that his actions on September 10, 2015, were in conformity with other purported bad acts.  *See id.* at 16 ("[T]he jury should be able to consider whether the physical and emotional impact on this plaintiff of *this* confrontation with the corrections officer is mitigated by *the fact that he is no stranger to violence, and in fact appears to have sought it out in other circumstances*." (emphasis added)).

Plaintiff further notes that the evidence described above cannot be used for impeachment. On October 19, 2023, without warning, long after the close of discovery, six days after this Court's deadline to submit trial exhibits, and six days after the deadline for Plaintiff to submit motions *in limine*, Defendants produced to Plaintiff 110 pages of documents purportedly related to "incidents described on Plaintiff's Infraction History." *See* Ex. B. Defendants have stated their intent to use these materials for impeachment. As discussed in Plaintiff's Motion *In Limine* to Exclude Evidence of Prior Bad Acts (Dkt. 157), Federal Rule of Evidence 608(b) bars Defendants from using extrinsic evidence of prior bad acts for impeachment. And that rule should be applied strictly to exclude the use of irrelevant and highly prejudicial evidence that Defendants produced long after the close of discovery without any excuse for their inordinate delay.

For the reasons stated in Plaintiff's Motion *In Limine* to Exclude Evidence of Prior Bad Acts (Dkt. 157), this Court should exclude evidence of Plaintiff's alleged participation in "fights and assaultive conduct" and deny Defendants' motion *in limine*.

## X.    RESPONSE TO DEFENDANTS' TENTH MOTION *IN LIMINE*

In their final motion *in limine*, Defendants ask that this Court refrain from charging the jury on punitive damages or, alternatively, "reserve on the issue and make a determination once it has had an opportunity to review the trial evidence" on the grounds that there is no factual predicate in the record to support such a charge. *See* Defendants' MIL Brief at Point X.

As Defendants' argument is based on the lack of "a factual predicate in the trial record," *see id.* at 17, it is "in reality, a motion for summary judgment dismissing the claim for punitive damages." *Williams* v. *Regus Mgmt. Grp., LLC*, No. 10-cv-8987, 2012 WL 1711378, at *2 (S.D.N.Y. May 11, 2012). The time for summary judgment has come and gone—Defendants

moved for summary judgment pursuant to this Court's scheduling order and did not seek dismissal of Plaintiff's claim for punitive damages. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. 84). For this reason alone, Defendants' "motion *in limine*" should be dismissed. *Williams*, 2012 WL 1711378, at *2 ("[Defendant] previously moved for summary judgment in this case . . . and did not seek to dismiss the claim for punitive damages. At this stage, therefore, the issue of whether [plaintiff] is entitled to punitive damages must await resolution at trial."); *see also TVT Records* v. *Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344–45 (S.D.N.Y. 2003) (denying as impermissible motions in limine that, "in the guise of addressing limited evidentiary issues, . . . would effectively serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself").

There are, of course, other grounds to dismiss this motion. In making this motion, Defendants ignore the unique interaction between the standard for Eighth Amendment excessive force claims and the standard for punitive damages. As other courts have observed, a finding of "constitutionally excessive force in violation of the Eighth Amendment" is also a "threshold finding of evil intent or callous indifference needed to warrant punitive damages." *Cooper* v. *Morales*, 535 F. App'x 425, 432 (5th Cir. 2013) (per curiam) (quotation omitted); *see also Robinson* v. *Delgado*, No. 02-cv-1538, 2010 WL 1838866, at *3 (N.D. Cal. May 3, 2010) ("Plaintiff is claiming excessive force in violation of the Eighth Amendment, for which punitive damages are clearly appropriate."). That is because "threshold standard for excessive-force liability—that the force was applied maliciously and sadistically for the very purpose of causing harm—is substantially indistinguishable from the threshold standard for punitive damages." *Cooper*, 535 F. App'x at 432 (quotation omitted).

Here, this Court found there was sufficient evidence in the record to establish a genuine dispute of material fact as to whether Defendants used excessive force against Plaintiff in violation of his Eighth Amendment rights.  In turn, this means there is a genuine dispute of material fact as to whether punitive damages are available and that there is a factual predicate for punitive damages.  Accordingly, Defendants' request that this Court refrain from charging the jury on punitive damages is without merit.[3]

To the extent that Defendants ask this Court to reserve judgment and determine the availability of punitive damages once the parties have rested, such sequencing cuts against judicial economy.  This Court, having already made a determination as to whether there is sufficient evidence in the record to support an Eighth Amendment excessive force claim has, in effect, also made a threshold determination as to the whether there is sufficient evidence to support a claim for punitive damages.  *See Cooper*, 535 F. App'x at 432.

---

[3] The very cases cited by Defendants show that courts are loath to make a determination as to the availability of punitive damages before trial.  *See, e.g.*, *Scoma* v. *City of New York*, No. 16-cv-6693, 2021 WL 1784385, at *14 (E.D.N.Y. May 4, 2021) ("As defendants' argument focuses on the 'insufficiency of evidence in support of Plaintiffs' claim for punitive damages,' this court concludes that it is inappropriate to make this determination before the court has the opportunity to evaluate the trial evidence.").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny

Defendants' Motions *In Limine*.


Dated:  New York, New York
          October 20, 2023

                                        WACHTELL, LIPTON, ROSEN & KATZ


                                        By:   /s/ Ethan P. Amaker
                                        _____
                                                Jonathan M. Moses (JM 9049)
                                                Ethan P. Amaker (admitted *pro hac vice*)

                                        51 West 52nd Street
                                        New York, New York  10019
                                        Telephone:  (212) 403-1000
                                        Fax:  (212) 403-2000

                                        *Attorneys for Plaintiff Marcelino Castro*